EMERSON *v*. LOVELAND.

*(Supreme Court, General Term, First Department.* April 18, 1890.)

VOLUNTARY PAYMENT—MISTAKE OF FACT.

A purchaser of mining property agreed in writing to make an "equitable" settlement of a balance claimed by defendant for his services in opening mines on the premises, and to indemnify his vendor therefrom. The agreement also recited that the vendor did not admit any liability whatever to defendant. Without making further inquiry plaintiff paid defendant part of an amount which the latter falsely represented to be due him. *Held,* that this was not a payment made under a mistake of fact.

Appeal from judgment on report of referee.

Action by Rufus H. Emerson against William A. H. Loveland. There was judgment for plaintiff. Defendant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Wheeler H. Peckham,* for appellant. *George W. Green,* for respondent.

VAN BRUNT, P. J. This action was brought to recover the sum of $5,000 alleged to have been paid under a mistake of fact. The complaint alleges that in December, 1879, the plaintiff was engaged in negotiating for the purchase of all the property belonging to the Land & Coal Company of Golden, a corporation organized under the laws of Massachusetts; that at the time of these negotiations the defendant stated that there was due him from the company for plant, labor, and expenses in opening coal mines on the property of said company the sum of $12,000 and over; that at that time the plaintiff was informed and believed that the claim of said defendant was a just one, and that the said company was indebted to him in the sum of $12,000, and that thereafter having concluded to purchase the property, and, having agreed to pay such amount, if any, of the claim of the defendant not to exceed the sum of $12,000 as might thereafter be found due and owing to the defendant from said company, on the 1st of February, 1888, at the request of the defendant, and relying solely upon his representations that there was due and owing the sum of $12,000, the plaintiff paid to the defendant the sum of $5,000 on account of said alleged indebtedness; that neither at the time of said purchase, nor at any time, did said company owe said defendant said sum of $12,000, or any amount at all, and that said payment of $5,000 was made by the plaintiff under a mistake of fact, and because he relied upon the declarations of the defendant as aforesaid; that such representations were untrue, and said claim was wholly without foundation, and judgment was demanded for said sum of $5,000. The defendant, by his answer, denied the allegations contained in the complaint, and alleged as a separate defense that at the time of the sale and transfer of the property of the Land & Coal Company of Golden he was in possession of the mining property, and had expended large sums in the development of the property, and was to have the right to mine and reimburse himself from the sale of the mining products for his expenditures, and that it was agreed between the defendant and the company that he would consent to the sale of the property, and deliver possession thereof to the purchaser, and that from the purchase money he should be paid the sum of $12,000 as and for the balance of his expenditures made in developing the property; that the property was sold, and the plaintiff promised and agreed to pay said sum of $12,000, and thereafter paid $5,000 on account. The referee found as a fact that the payment was made upon the representation made by the defendant that there was due to him the sum of $12,000, which representation was false, and that therefore the money was paid under a mistake of fact, and gave judgment for the plaintiff, and from the judgment thereupon entered this appeal is taken.

There is no doubt but that if the plaintiff made the payment relying upon the representation of the defendant that there was due from the Land & Coal Company of Golden to him the sum of $12,000, and that no circumstances came to his attention which would put a prudent man upon his guard as to the truth of this representation, upon proof of the falsity of such representation, he could recover back the payment so made. The evidence of the plaintiff shows that in the month of December he went to Colorado to examine the property of this company which had been offered for sale and called to his attention; that he took a letter of introduction to the defendant, and upon his arrival presented it; that the defendant showed him the property, exhibited to him its condition, and showed its mines and factory. The plaintiff told the defendant that he was there for the purpose of investigating the property with a view of purchasing it, and the defendant said to the plaintiff that he had opened a mine upon the property at some time previous, and had expended a considerable sum of money. That, owing to the fact of the mine taking fire, he had been compelled to abandon operations, and allow the mine to fill with water in order to put out the fire; and, having expended a certain amount of money on this property, he had a claim for what he had failed to

reimburse himself for in mining the coal during the time he operated the mine, which claim, he expected, would be provided for in the sale of the property. He testified that with that information he came back east, and concluded the purchase from the Land & Coal Company of Golden in Boston, Mass. The plaintiff also stated that the defendant told him he could not tell the amount due, but that it exceeded $12,000. It further appears from the evidence that at the time of the completion of this purchase the plaintiff executed the following paper: "I, Rufus H. Emerson, of Jackson, in the state of Michigan, for value received by me of the Land and Coal Company of Golden, the receipt whereof is hereby acknowledged, do hereby covenant and agree with said Land and Coal Company of Golden that I will make an equitable settlement of the balance claimed by W. A. H. Loveland, as due him for plant, labor, and expenses in opening coal mines on the property of said Land and Coal Company of Golden; said amount not to exceed twelve thousand dollars, as per understanding between said Loveland and A. A. Hayes, Jr.; and covenant and agree with said company to save harmless and indemnify all who are liable to said Loveland in respect thereto (if any is or are liable to him) against any and all liability or responsibility to him in respect to the same. Said Land and Coal Company of Golden do not admit any liability whatever to said Loveland. In witness whereof I have hereunto set my hand and seal this 9th day of February, A. D. eighteen hundred and eighty [these words being first interlined,] viz., words 'with said company.' RUFUS H. EMERSON. [Seal.] Signed, sealed, and delivered in presence of JOSHUA D. BALL." And that in February, 1880, upon the application of the defendant, he paid to him $5,000 on account of this latter agreement. This is the sum which the plaintiff desires to recover back, upon the ground that the Land & Coal Company of Golden were not indebted to defendant in any amount whatever.

Whether the true construction of the testimony of t1e plaintiff justifies the finding of the referee that the defendant represented to him that the company was indebted to him in the sum of $12,000 or not, it is clear that at the time of the purchase of the property by the plaintiff he knew that the company disputed any indebtedness to the defendant. By the very agreement of indemnity which the plaintiff executed it is expressly stated that said company did not admit any liability whatever to the defendant; and another pregnant expression in that agreement is that he will make an equitable settlement of the balance claimed by defendant as due him for plant, labor, and expenses in opening coal mines upon the property of said Land & Coal Company. Thus the plaintiff knew that it was an equitable claim, and not a legal one, which was provided for upon his part in favor of Loveland. He also knew that this claim, whatever it was, was disputed by the company. Under these circumstances, how can it be said that the plaintiff had a right to rely in making the payment to the defendant upon his representation that this sum was due? He knew that the claim was disputed, and was thus put upon his guard. He was put upon inquiry. He made none, but paid the money. It further appears by the contract itself entered into between the plaintiff and the Land & Coal Company of Golden that there was no recognition upon the part of the company of the claim of the defendant, because where provision is made for payments on the part of the plaintiff it is provided that a certain sum shall be paid, and then that the plaintiff will make an equitable settlement of the balance claimed by said Loveland as due to him, such sum not to exceed $12,000, as per understanding between Loveland and A. A. Hayes, Jr., clearly showing that there was no admission upon the part of the company of any liability to Loveland of which the plaintiff had due notice.

Under these circumstances, when the plaintiff made the payment to the defendant in pursuance of this agreement, as he says himself, how can it be said to be anything more than a payment in pursuance of his contract to make

an equitable settlement of the claim which the defendant made upon the Land & Coal Company of Golden? As already said, the plaintiff was notified and informed that the company repudiated any legal liability to the defendant; and as a consequence the plaintiff was put upon his guard, and cannot be said to be excused in making the payment by claiming that he relied wholly upon these representations of the defendant. Certainly, in this condition of affairs, if he did rely thereon, he had no right so to do. The representation made by the defendant to the plaintiff does not appear to have been made for the purpose of securing the payment of this money, but was simply, according to plaintiff's own statement, given as notice to a purchaser of the claim which the defendant had. Under these circumstances it would appear that the payment was made by the plaintiff with full notice that the indebtedness was disputed by the company, and if he chose to make the payment without further inquiry he cannot now recover it back. The judgment entered upon the report of the referee should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.